UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

MOKHMAD SHIDAEV,

      Petitioner,

v.

WARDEN, EDEN DETENTION
CENTER,

      Respondent.

No. 6:25-CV-107-H

## ORDER

Before the Court is Mokhmad Shidaev's second amended petition for a writ of habeas corpus (Dkt. No. 6). Shidaev was re-detained by ICE late last year to enforce an indisputably valid order of removal issued against him, which became final in April 2025. After his re-detention, he sought habeas relief, raising four claims: (1) that his detention exceeds the removal period authorized federal law; (2) that his detention beyond the removal period violates due process; (3) that he is likely to be removed to a country that will, in turn, remove him to Russia without an opportunity to present a fear-based claim and in violation of the relief granted to him in immigration court; and (4) that his release was revoked in violation of the INA's implementing regulations.

Earlier this week, the respondents filed a notice of their intent to remove Shidaev from the United States to the Central African Republic within three days, in accordance with his final order of removal. Dkt. No. 34. The Court therefore concludes that his first two claims fail. *See* Dkt. No. 6 ¶¶ 32–40. Because there is now a significant likelihood of Shidaev's removal in the reasonably foreseeable future, the Court finds that his claims to the contrary are without merit. Dkt. No. 34 at 1. His remaining claims fail on the merits.

Therefore, the petition for a writ of habeas corpus (Dkt. No. 6) is denied.  His motion for temporary restraining order (Dkt. No. 35) is denied as moot.

**1.      Factual and Procedural Background**

**A.      Factual Background**

Shidaev is a native of Kyrgyzstan and a citizen of Russia.  Dkt. No. 6 ¶ 22.  Before he illegally entered the United States in 2021, Shidaev was convicted of extortion and kidnapping in Russia and sentenced to six-and-a-half years in prison.  Dkt. No. 13 at 2. Presumably after serving that sentence, Shidaev "escaped from Russia[] and applied for asylum in the United States," citing the "harm that he suffered because of his sexual orientation."  Dkt. No. 6 ¶ 22.  In 2024, Oklahoma law-enforcement authorities arrested Shidaev on a felony warrant for domestic violence with a pattern of physical abuse.  Dkt. No. 13 at 2.

Soon after, Shidaev was placed into removal proceedings with a Notice to Appear, and he was transferred from Oklahoma to federal custody.  Dkt. No. 14 at 5.  The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  *Id.* at 7; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  In January 2025, an immigration judge ordered Shidaev removed to any third country except Russia. Dkt. No. 6 ¶ 23.  Three months later, that order became final when the Board of Immigration Appeals dismissed the government's appeal.  Dkt. No. 13 at 3.  Shidaev claims that he was later released from immigration detention on an Order of Supervision after the

government "was unable to effectuate his removal to any country." Dkt. No. 6 ¶ 25.[1] However, in November 2025, he was re-detained by immigration officials pending his removal to a third country. *Id.* ¶ 28.

### B.    Procedural Background

Shidaev filed his second amended petition earlier this year while proceeding pro se, claiming that the respondent was detaining him without "any factual or legal basis." Dkt. No. 6 ¶ 30. The Court ordered the respondent to show cause why Shidaev's petition should not be granted. Dkt. No. 7; *see* 28 U.S.C. § 2243. The respondent timely answered (Dkt. Nos. 13; 14), and Shidaev filed a reply (Dkt. No. 16). After briefing was complete, Shidaev moved for leave to supplement his second amended petition "to explain events that have taken place since he filed" that petition. Dkt. No. 24.[2] The Court granted the motion and set a schedule for supplemental briefing. *Id.* The respondent filed a response (Dkt. Nos. 29; 30), and Shidaev, by way of counsel (*see* Dkt. No. 28), filed a reply (Dkt. Nos. 32; 33). The petition is ripe for review.

Days ago, the respondent filed a notice of intent to remove Shidaev from the United States within the coming weeks. Dkt. No. 34. In response, Shidaev filed a motion for temporary restraining order, asking the Court to temporarily restrain the respondent "from removing [him] to" a third country "pending an expedited hearing and further order of this Court." Dkt. No. 35 at 4.

---

[1] Notably, the respondent submitted an affidavit from a deportation officer stating that "[t]here are no records indicating that Shidaev was ever released on an Order of Supervision." Dkt. No. 14 at 5.

[2] The supplement was in addition to, not in lieu of, the second amended petition.

2.    **Legal Standards**

A.    **Orders of Removal**

Ordinarily, the government must remove an alien ordered removed within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). If an alien is not removed within this period, the alien is subject to supervision. *Id.* § 1231(a)(3). Supreme Court precedent clarifies these statutory provisions. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to determine how long the government may detain an alien pending removal under this section. *Id.* at 682. The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Alsheref's habeas petition. *See id.* at 688; Dkt. No. 1 at 3–4. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation

– 4 –

negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

Moreover, "to limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the government to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an order of supervision "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### B.    Third-Country Removal

When the government seeks to remove an alien, it ordinarily commences removal proceedings, which require an evidentiary hearing before an IJ.  8 U.S.C. § 1229a.  Removal proceedings determine both an alien's removability and his ultimate destination.  By default, an alien is entitled to select one country "to which the alien wants to be removed."  8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f).  But if the alien does not select a country, the IJ will designate the country of removal and, if appropriate, alternative countries.  8 C.F.R. § 1240.10(f).

Federal law also provides aliens with certain protections—some discretionary, others mandatory—such as asylum, withholding of removal, and the Convention Against Torture (CAT).  8 C.F.R. § 1240.11(c)(1).  Where an IJ finds that an alien is likely to be persecuted or tortured, that alien is entitled to mandatory protection through withholding of removal or the CAT, respectively.  *See Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility.").  But withholding of removal and CAT protection are relevant only to the removable alien's destination; they are not wholesale protections against removal.

Thus, circumstances may arise where the government can still remove an alien to a "country whose government will accept the alien," even though that country was not authorized by an IJ.  8 U.S.C. § 1231(b)(2)(E)(vii).  Such removals are called "third-country removals."  Federal law prohibits third-country removals if "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's

– 6 –

race, religion, nationality, membership in a particular social group, or political opinion."

8 U.S.C. § 1231(b)(3)(A).  Likewise, the Foreign Affairs Reform and Restructuring Act of

1998, by codifying CAT protections, prevents aliens from being removed to any country

where they would face torture.  *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18.

In view of these protections against third-country removal, the question of what procedures

the Constitution requires has been a topic of ongoing controversy.  *See, e.g.*, *Trump v. J.G.G.*,

604 U.S. 670 (2025); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).

### C.    *D.V.D. v.* **DHS**

In February 2025, ICE issued a directive (the February Directive) instructing its

officers to review for removal all cases on the non-detained docket and determine the

viability of third-country removal.  *Nasrabadi v. Villegas*, No. 1:25-CV-129, Dkt. No. 16 at 5

(N.D. Tex. Oct. 28, 2025).  The following month, DHS issued an updated guidance (the

March Guidance) on third-country removals.  *Id.*  The March Guidance memorandum

dictates that, if the third country has "provided diplomatic assurances that aliens removed

from the United States will not be persecuted or tortured" and the Department of State

deems those assurances credible, an alien "may be removed without the need for further

procedures."  *Id.* (quotation omitted).  In the event an alien "affirmatively states a fear,"

USCIS will conduct a screening within 24 hours of the referral and determine whether the

alien "would more likely than not be persecuted on a statutorily protected ground or

tortured" if removed to the third country.  *Id.* (quotation omitted).  If the United States

Citizenship and Immigration Services "determines that the alien has not met this standard,

the alien will be removed."  *Id.*

In April 2025, the District of Massachusetts certified an injunctive or declaratory (and thus non-opt-out) class under Federal Rule of Civil Procedure 23(b)(2) challenging these new third-country removal procedures. *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 385–86 (D. Mass. 2025). That court also issued a preliminary injunction ordering the government not to remove any class members to a third country without complying with specified procedures. *Id.* at 392–93. The court defined the non-opt-out class as

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378.

In June 2025, the Supreme Court, while leaving the certified class intact, stayed the *D.V.D.* preliminary injunction pending the appeal before the United States Court of Appeals for the First Circuit. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025). Afterwards, the First Circuit determined that "the most expeditious and efficient path forward" was to "terminate [the] appeal and remand the case so that it may proceed to judgment." *D.V.D. v. DHS*, No. 25-1393, 2026 WL 1102937, at *1 (1st Cir. Feb. 20, 2026). Five days later, the District of Massachusetts dissolved its preliminary injunction and entered partial summary judgment for the class plaintiffs. *D.V.D. v. DHS*, 821 F. Supp. 3d 102, 167 (D. Mass. 2026). The following month, the First Circuit granted a stay of the summary-judgment order pending appeal, and the class members' claims remain pending on appeal before the First Circuit. *See* 1:25-CV-10676, Dkt. No. 246.

3.    Analysis

A.    **Shidaev's claims relating to prolonged post-final-order-of-removal detention are moot.**

First, the Court concludes that the respondent's notice (Dkt. No. 34) and Shidaev's motion for TRO render his first two claims moot.  In the second amended petition, Shidaev claimed that his detention violated "8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*," as well as the Due Process Clause.  Dkt. No. 6 ¶¶ 32–40.  By virtue of the recent filings, both parties now appear to agree that there is a significant likelihood of removal in the reasonably foreseeable future, rendering any claim to the contrary moot.  *See Zadvydas*, 533 U.S. at 701.  Accordingly, these claims are denied.[3]

B.    **Shidaev's *Accardi* claim is not cognizable in habeas.**

Shidaev argues that his "supervised release was revoked in of the substantive and procedural requirements of 8 C.F.R. § 241.4(*l*)."  Dkt. No. 6 ¶ 46.  He asserts that, in so doing, the respondent violated the *Accardi* doctrine.

The *Accardi* doctrine requires agencies to follow their own rules and procedures.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").  The regulatory requirements for the arrests of aliens are set forth in 8 C.F.R. § 241.4(*l*).  "The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release," under certain conditions.  § 241.4(*l*)(2).  Those conditions include when "[t]he purposes of release have been served" or "[i]t is appropriate to enforce a

---

[3] Moreover, insofar as Shidaev's third claim is predicated on the respondent's lack of "legal basis to detain [him]," Dkt. No. 6 ¶ 43, that claim fails for the same reasons.

removal order." §§ 241.4(l)(2)(i), (iii).  It is notable that Shidaev does not argue that the respondent lacked a valid basis to revoke his release; rather, he argues that his release "was revoked by an individual who lacked the authority to do so under that regulation." Dkt. No. 6 ¶ 46.

Merits aside, Shidaev's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.).  Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959).  "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)).  In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d at 935–36.  It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the [alien] can lawfully be detained." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Shidaev does not explain why his detention or removal is rendered unlawful by virtue of the alleged regulatory noncompliance.  For the reasons above, the Court concludes that his *Accardi* claim is not cognizable in habeas.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas).  Because Shidaev is subject to detention for

the purpose of effecting his removal from the United States, *see* 8 C.F.R. § 241.4(*l*)(2)(iii), nothing about the purported regulatory violation calls into question the validity of his confinement.

> ### C.     Shidaev's fear-based claim belongs in the *D.V.D.* class action.

Finally, Shidaev's petition asserts that the respondent seeks to remove him "to a third country which will in turn remove [him] back to Russia without adequate notice and opportunity to be heard." Dkt. No. 6 ¶ 44. Because the respondent has since clarified that the third country to which Shidaev will be removed is the Central African Republic, *see* Dkt. No. 36 at 4, the Court construes this as a fear-of-harm claim.

As an alien subject to a final order of removal whom ICE plans to deport to a third country, Shidaev is a member of the *D.V.D.* class. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 392–93 (D. Mass. 2025). The class in that litigation likewise seeks the same remedy as Shidaev: an injunction ordering the respondents "to provide meaningful notice and opportunity to present a fear-based claim before executing removal to a third country." *See id.* at 386. Accordingly, this Court should not interfere. *See Green v. McKaskle*, 770 F.2d 445, 446–47 (5th Cir. 1985) ("[E]quitable claims by members of the . . . class, which are comparable to those claims litigated and under ongoing review and supervision of the court in the . . . class action, should not be maintainable as individual causes of action."). Thus, to the extent Shidaev objects to removal to the Central African Republic for failing to have an adequate opportunity to present a fear-based claim, the proper place to do so is the *D.V.D.* litigation.

Moreover, the respondent provides an affidavit from Emmanuel Espinal, the Acting Unit Chief of the Removal Management Division of ICE's Enforcement and Removal

Operations. Dkt. No. 36. The affidavit states that the "Central African Republic has entered into an arrangement with the United States to accept certain aliens under final orders of removal from the United States." *Id*. at 4. Further, "[t]he Central African Republic provided diplomatic assurances that the aliens removed from the United States pursuant to this arrangement will not be subjected to persecution or torture nor in any country the Central African Republic may further transfer them to." *Id*. Because the government has determined that these assurances are "credible and reliable," it seeks to remove Shidaev to the Central African Republic as early as tomorrow. *Id*.

The Court therefore concludes that, even Shidaev's fear-based claim were properly before the Court, the Court would hold that any error on the part of the respondent was harmless. *Cf. Nguyen v. Noem*, 797 F. Supp. 3d 651, 662–63 (N.D. Tex. 2025) (finding that "[e]ven if the [government] did fail to abide by [procedural] requirements . . . any error was harmless"). *See id*. at 663 ("He has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion. . . . Given that [the petitioner] has had more than a full notice and opportunity to be heard, the Court concludes that, even if the respondents failed to abide by Section 241.13(i)(3), the error is now harmless in light of the procedures in this case."). Whereas Shidaev presents only generalized information regarding the Central African Republic's safety, *see* Dkt. No. 35-2, the respondent provides specific and credible assurances that aliens removed to the Central African Republic will not be persecuted, tortured, or further transferred to countries where persecution or torture is likely. Dkt. No. 36 at 4. "As a result of IIRIRA there must be a particularized, irreparable harm beyond mere removal to justify a stay." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring). Because Shidaev can show no

particularized harm from removal to the Central African Republic, his claim would fail even if it were properly before the Court

**4.     Conclusion**

The Court denies Shidaev's second amended petition for a writ of habeas corpus (Dkt. No. 6).  His prolonged-detention claims are mooted by the recent developments in this case, his *Accardi* claim is not cognizable in habeas, and his fear-based claim is not properly before the Court.  His motion for TRO (Dkt. No. 35) and motion to stay (Dkt. No. 39) are denied as moot.

So ordered on July 29, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE